J-S38017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.D.J.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1629 EDA 2023 |

Appeal from the Decree Entered May 23, 2023
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2023-A9038

BEFORE:   LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED DECEMBER 5, 2023**

R.S. (Father) appeals the decree issued by the Bucks County Orphans'

Court, which granted the petition of Bucks County Children and Youth Services

(the Agency) to involuntarily terminate Father's rights to his 21-month-old

son, C.D.J.H. (the Child), pursuant to the Adoption Act. **See** 23 Pa.C.S.A. §

2511(a)(1), (b).[1]  On appeal, Father argues the Agency did not prove, by clear

and convincing evidence, that he demonstrated a settled purpose of

relinquishing his parental claim, or that he refused or failed to perform his

parental duties.  After careful review, we affirm.

The record discloses the following factual and procedural history:  The

Child was born in August 2021.  At his birth, the Child tested positive for

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court also terminated the rights of C.H. (Mother), who did not
appear at the termination proceeding and did not appeal.

fentanyl and cocaine. Both parents were homeless and struggled with addiction. However, Father was unaware of the Child's existence, and the Agency was unaware of Father's whereabouts. In September 2021, the Agency filed a dependency petition, which the juvenile court granted. The Child was subsequently removed from Mother's care.[2]

In May 2022, when the Child was approximately 8 months old, Father happened to run into Mother, and she informed him that she had given birth, and the Child was his. Allegedly, Father asked to meet the Child and Mother told him that she would arrange a visit; Mother did not tell him that the Child was in the custody of the Agency or was the subject of dependency proceedings. Despite seeing Mother on a couple more occasions, there was never a meeting between Father and the Child.

Meanwhile, the Agency claimed that it was trying to locate Father but was unsuccessful despite its diligent efforts. Mother had informed the Agency that Father was homeless, so a caseworker drove around the Kensington area of Philadelphia seeking to locate him. The Agency requested assistance from the outreach program, Grace Project, to aid in the search. The Agency also asked local law enforcement and conducted a Department of Public Welfare (DPW) search. For his part, Father claimed that the Agency did not make any effort to locate him. However, the Agency suggested that Father was aware

---

[2] Child resides with his foster parents, who also care for Child's half-sister, C.S. That sibling is not subject to these proceedings.

that the Child was in foster care, but avoided contacting the Agency, because there was a warrant for his arrest.

October 1, 2022 – approximately four months after learning of the Child's birth – Father became incarcerated due to the warrant. In mid-December 2022, the Agency finally learned of Father's whereabouts after he sent a letter from prison. He told the Agency that he did not want his son to visit him, because he did not want the young Child subjected to the environment of a state prison. However, he desired to contact the foster family. Father wrote several letters to the foster family, complete with pictures drawn specifically for the Child. He also participated in sobriety programs in the prison and stated his intention to find work and housing upon his release.[3]

On March 16, 2023, the Agency petitioned to terminate Father's rights, pursuant to Section 2511(a)(1) and (b) of the Adoption Act. The orphans' court held a hearing on May 23, 2023, which Father attended by video. On the same day, the orphans' court granted the Agency's petition and terminated Father's rights.

---

[3] Father told a caseworker that he would be released no later than November 2023, but the Agency subsequently learned from the prison that Father's earliest release date was May 2024. The orphans' court noted in its Pa.R.A.P. 1925(a) opinion, dated July 7, 2023, Father had yet to be released. For our purposes, the date of Father's release is insignificant.

Father timely filed this appeal and presents the following issue for our review:

> 1. Whether the trial court abused its discretion and erred as a matter of law by involuntarily terminating Father's parent[al] rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) in the absence of clear and convincing evidence that termination would best serve the needs and welfare of the Child.

*See* Amended Concise Statement of Errors Complained of on Appeal, 9/12/2023; *see also* Father's Brief at 4.[4]

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that

---

[4] In an apparent typographical error, Father mistakenly alleged that the orphans' court terminated his rights under Section 2511(a)(2), (5), (8) and (b). However, the court only terminated Father's rights under Section 2511(a)(1) and (b); the Agency did not petition for termination under these other Section 2511(a) grounds.

The Agency filed with this Court an application to quash Father's appeal. We denied the application but directed Father to amend his concise statement. Father complied. We note further that his Brief contains the same typographical error. However, our review was not impeded, because the argument section of the brief pertains only to Section 2511(a)(1), and not the other grounds under Section 2511(a).

often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. **In re Adoption of L.A.K.**, 265 A.3d 580, 597 (Pa. 2021); **see also Interest of S.K.L.R.**, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." **In re P.Z.**, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section

> 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Our discussion begins with the orphan's court's decision to terminate Father's rights under Section 2511(a)(1), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

To analyze the orphans' court decision under this subsection, we must first address the statutory timeframe and its bearing on the facts of this case. The Child was born in August 2021, but the court believed Father's testimony that he did not become aware of the birth until May 2022. Thus, the relevant inquiry into Father's conduct begins only after he learned of the Child's existence. *See In re Adoption of B.G.S.*, 245 A.3d 700, 707 (Pa. Super. 2021) (holding that a parent cannot be held responsible for failing to perform

his parental duties during a time when he did not know, and had no reason to know, that he was a parent).

However, Father argues that the orphans' court may only consider an even narrower portion of the case history. He alleges the orphan's court erred because it focused too heavily on Father's conduct before his incarceration – *i.e.*, May 2022 through October 1, 2022. According to Father, the court should have focused **solely** on his conduct that falls squarely in the statutory timeframe – *i.e.*, September 2022 through March 2023, at which point the Agency filed the termination petition. **See** Father's Brief at 12.

Father is mistaken. The six-month period prior to the filing of the petition is not the only history the court may consider. We have held that "[a]lthough the six-month period immediately preceding the filing is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month provision." **In re I.J.**, 972 A.2d 5, 10 (Pa. Super. 2009) (citation omitted); **see also In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (holding that the trial court must examine the individual circumstances of each case and consider all the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination). We conclude that the orphans' court properly applied the temporal aspect of Section 2511(a)(1).

Having clarified the application of the statutory timeframe, we turn to Father's substantive challenge – namely, that he did not evince a settled

purpose of relinquishing his parental claim, nor did he refuse or fail to perform his parental duties. Father argues that his efforts must be viewed in context, that there are limits to what he could do while incarcerated.

Our Supreme Court has long held that "incarceration neither compels nor precludes termination." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

> Th[e Pennsylvania Supreme] Court has long held that a parent's absence or failure to support his or her child due to incarceration is not, in itself, conclusively determinative of the issue of parental abandonment. *In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975). Indeed, incarceration alone is not an explicit basis upon which an involuntary termination may be ordered pursuant to Section 2511 of the Pennsylvania Adoption Code. *In re C.S.*, 761 A.2d 1197, 1201 [] (Pa. Super. 2000) (*en banc*). Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison to continue and pursue a close relationship with the child or children. *McCray, supra* at 655. An incarcerated parent desiring to retain parental rights must exert him or herself to take and maintain a place of importance in the child's life. *Adoption of Baby Boy A.,* 517 A.2d 1244, 1246 (Pa. 1986).

*In re: R.I.S.*, 36 A.3d 567, 573-74 (Pa. 2011) (plurality opinion); *cf. S.P.*, 47 A.3d at 828.

Instantly, Father argues that there was no evidence that he demonstrated a settled purpose of relinquishing his parental claim. Father cites, for example, the letters that he sent to the Child and the foster parents, as well has his refusal to sign a voluntary consent to termination. Father argues further that he did not refuse to perform his parental duties, because

the Agency never "gave him the opportunity to do so." *See* Father's Brief at 13. He reasons that the Agency is responsible, because it did not make diligent efforts to locate him after the Child was adjudicated dependent. Finally, Father argues that the Agency did not prove that he failed to perform his parental duties. For support, Father cites the efforts he made during his incarceration:

> Father has availed himself to every self-improvement program available to him while [in prison] to prepare himself for fatherhood upon release. Father has sent multiple letters to the Child's foster family and to the Agency. His lengthy letters to the foster parents included personal anecdotes in hopes that he and the Child's foster family could become friends, as well as requests that they expose the Child to music and animals. He draws colorful pictures for his son and sends them with the letters. In addition, Father testified that he has plans to procure stable employment immediately upon his release from prison. He plans to find stable living arrangements within three weeks of his release. He also is committed to maintaining sobriety, obtaining a valid driver's license, and more importantly, work on forming a relationship with his son. Father expressed gratitude for the Child's foster family for taking such good care of his son and expressed that he wants the family to remain in the Child's life.

Father's Brief at 16-17

The orphans' court acknowledged that Father was unaware of the Child's birth until May 2022, and it did not hold him responsible for his failure to parent prior to that date. Still, the court emphasized that Father has **never** met the Child. The court did not find credible Father's claim that he tried to meet the Child but was thwarted by Mother. *See* Orphans' Court Opinion at

6; 7. Instead, the court concluded that Father made no genuine effort, and it did not believe Father's claim that he was unaware of the dependency proceedings.

The record supports this finding. According to the caseworker, Father did not pursue visitation before he was incarcerated, because he knew there was a warrant out for his arrest:

> The caseworker: [Father] at that time had stated he had known about [the Child] since approximately February 2022, but he did not reach out [to the Agency] until [after he was incarcerated, in December 2022], because he was on the run from state parole.
>
> At that time, he stated that he was not interested in fighting an adoption or pursuing custody, but had hoped to meet him once he was out of prison.

N.T. at 29.

The orphans' court also concluded that Father made no genuine effort at having a relationship with the Child, even after Father was incarcerated. Father explained that he did not want the Child to visit him at the prison, because it would be a "potentially traumatic situation" for the Child. *See* Father's Brief at 18; *see also* N.T. (5/23/23) at 43-44. In his view, Father's choice to forgo visitation was a "selfless decision to shield the Child." *See* Father's Brief at 18. But the orphans' court did not find Father's justification believable. *See* Orphans' Court Opinion at 7.

After review of Father's appellate arguments and the orphans' court's findings, we find this matter analogous to **McCray** and **In re B.,N.M.**, **supra.** In **McCray**, the Supreme Court concluded that termination was warranted after noting that the incarcerated father did not take advantage of his visitation opportunities, nor did he make sincere or persistent efforts to locate or inquire about his daughter. **McCray**, 331 A.2d at 655.

Our decision in **B., N.M.** is more on point. There, the incarcerated father drastically reduced his contact with the child, because he said he did not want to interfere with the child's stable life. **B., N.M.**, 856 A.2d at 852. The father said he thought it was inappropriate for him to play a role in the child's life until he had a chance to be free when he became eligible for parole. **Id.** at 853.

This Court concluded that termination was warranted under 23 Pa.C.S.A. § 2511(a)(1). We explained that parents have an affirmative duty to parent the child, which requires continuing interest in the child and a genuine effort to main communication and association with the child. **Id.** at 855 (citing **In re Burns**, 379 A.2d 535 (Pa. 1977)) (further citations omitted). We reiterated that a parent "must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." **Id.** The obligation to utilize all available resources does not toll when the parent is incarcerated. **Id.**

Returning to the instant case, the orphans' court found that Father did not fulfill this obligation to utilize all available resources. Importantly, the court did not believe that Father postponed his relationship with the Child, in order to shield the Child from exposure to the prison environment. Even if Father was sincere in his intentions, our decision in **B.,N.M.** casts doubt on whether Father would be excused from his obligation to utilize all available resources to maintain the parent-child relationship. **B.,N.M.**, 856 A.2d at 855 ("Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.").

Importantly, we note that the court did not find Father to be credible. Generally, we do not disturb such findings. **See In re A.R.**, 125 A.3d 420, 422 (Pa. Super. 2015). Moreover, the court's finding that Father was not sincere explains the court's emphasis on Father's pre-incarceration conduct. Recall that Father argued that the orphans' court focused too heavily on Father's conduct prior to the six-month timeframe, instead of focusing on what Father did within that statutory window – *i.e.*, what Father did while he was incarcerated. Although we explained that the court must consider the whole history of the case, we reiterated that the six months preceding the filing of the petition was "the most critical." **In re I.J.**, 972 A.2d at 10, **supra.** The orphans' court emphasized Father's pre-incarceration conduct to explain its credibility finding. It found Father insincere when he said he wanted a relationship with the Child but did not want to subject the Child to prison visits.

As the court noted, Father made no effort to have a relationship with the Child prior to his incarceration.

We do not discount Father's struggles with addiction, nor do we doubt his reported involvement with self-improvement programs, his post-conviction plans, and his interest and gratitude in the foster parents' care of the Child. Notwithstanding, we agree with the orphans' court that none of this excuses his failure to perform his parental duties. Therefore, we conclude the court did not abuse its discretion when it found that termination was warranted under Section 2511(a)(1).

Having concluded that the trial court did not err or abuse its discretion under the first prong of the termination analysis under Section 2511(a), we would typically review the court's conclusion that termination would best serve the Children's needs and welfare under Section 2511(b).[5] We need not conduct such a review in this case, however.

---

[5] Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Although Father technically preserved his challenge to the court's decision under Section 2511(b), Father does not dispute the court's findings, *per se*. Rather, his argument is that the orphans' court never should have reached the Section 2511(b) analysis, because the court should have denied the Agency's petition under Section 2511(a)(1). **See** Father's Brief at 18-19. Father is correct that the termination analysis is a two-step process. But he only challenged the first step. Because we concluded that the court did not err under the first prong of the termination analysis, the court was correct to proceed to the second prong, Section 2511(b). There, the court found that termination best served the needs and welfare of the Child. Again, given that Father does not challenge these findings, we need not review them.

In sum, we conclude the orphans' court did not err or abuse its discretion when it determined that the Agency proved termination was warranted under Section 2511(a). The court appropriately applied the six-month statutory timeframe and its subsequent findings were supported by the record. Finally, the court did not err when it proceeded under Section 2511(b) and found that termination would best serve the Child's needs and welfare.

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2023